## No. 11,997.

### THEODORE VERRIER VS. P. E. LORIS, SHERIFF.

The administrator of the succession of a deceased wife is without right or authority to take possession, or assume control of property held in community between the deceased and the surviving husband and usufructuary, or to sell the same for the purpose of paying debts of the community, notwithstanding they are debts which the community owes to the separate paraphernal estate of the wife.

| | |
|---|---|
| 48 | 717 |
| 50 | 567 |
| 48 | 717 |
| 52 | 1175 |
| 48 | 717 |
| e115 | 716 |
| 48 | 717 |
| 124 | 662 |
| 125 | 190 |

APPEAL from the Eighteenth Judicial District Court for the Parish of Lafourche. *Caillouet, J.*

---

*Beattie & Beattie* for Plaintiff, Appellant, cite: 12 An. 457; 26 An. 232; 29 An. 524; 32 An. 792; 37 An. 867; 43 An. 236; 46 An. 357, 1284.

*Clay Knobloch & Son* for Louis Devillard, Defendant, Appellant.

---

Argued and submitted January 10, 1896.
Opinion handed down March 23, 1896.

---

The opinion of the court was delivered by

WATKINS, J.   This is an opposition to a judicial sale of real estate coupled with an injunction predicated on the following grounds, viz.:

That the property in controversy, which consists of a fractional lot of ground with a brick building and other improvements thereon, situated in the town of Thibodaux, was purchased by plaintiff on the 13th of June, 1891, and that same has been advertised for sale at public auction for the purpose of paying debts, at the instance of one Louis Devillard, pretending to be the administrator of the estate of his (petitioner's) deceased wife, Jeanne Claude Devillard.

That unless restrained and prohibited from so doing he will proceed to sell said property and convey a title thereto upon the adjudicatee at said sale to his great and irreparable injury.

That while petitioner believes that such sale and adjudication, when made, will be an absolute and utter nullity, in so far as it may pretend to convey a title to a purchaser, should there be one, he is unwilling to allow same to take place if he can avert or prevent it.

In addition to the foregoing, petitioner alleges that said sale proceedings were without notice to him, wrong and illegal in themselves done in bad faith, with malice and without probable cause, operate as a slander of his title, and have caused him great and irreparable damage and injury.

The prayer of the petition is that the sale be perpetually enjoined and for judgment personally and *in solido* against the sheriff and administrator in the following items of damages, viz.:

| | |
|---|---|
| Attorneys' fees | $400 |
| Slander of title | 500 |
| Injury to credit | 200 |
| | $1 100 |

The answer of Louis Devillard is that he is the duly appointed, qualified and acting administrator of the succession of Jeanne Claude Devillard, late wife of Theodore Verrier (plaintiff in injunction), and that the property in controversy belonged to the matrimonial

community theretofore existing between the deceased and the plaintiff.

That said property was advertised for sale for the purpose of paying debts of the said community and succession in pursuance of an order of court which was granted for that purpose.

That the illegal, wrongful and malicious issuance of the writ of injunction has caused said succession damages to the extent of one hundred and fifty dollars, and one hundred and fifty dollars additional in the way of court costs and advertising sale and interest which accumulated upon the debts of the succession.

Wherefore, he prays for the dissolution of the injunction and judgment against the plaintiff and the surety upon his injunction bond in the sum of three hundred dollars and costs.

On the trial there was judgment perpetuating the injunction and restraining sale of the property of the community under the order of the court to pay debts; but that decree was conditioned upon the plaintiff, as surviving husband and usufructuary, paying all the debts of the community, and particularly the debt due to the *separate* estate of the wife "within a period of ninety days, otherwise the administrator shall have the right to renew his application for an order for a sale to pay debts and liquidate the community."

The judgment rejected the plaintiff's demand for damages *in toto*.

From that judgment the plaintiff prosecutes this appeal, resisting the reservation as specified herein; and in this court the defendant administrator answers the appeal and avers that the judgment appealed from is erroneous and should be reversed—reiterating the charges contained in his answer in the lower court.

Having gone over the pleadings and judgment we find that there is presented for consideration and decision the solitary question of law: whether or not the administrator of the succession of the deceased wife can sell property of the legal community for the purpose of paying the debts of the community during the lifetime of the surviving husband? And in case that question is decided in the negative, whether or not the judge *a quo* had the legal right to make in his judgment the reservation he did.

Unquestionably the real estate in controversy belonged to the matrimonial community which existed between the plaintiff and his deceased wife, and that the community being dissolved by the death of the wife, the title vested in the surviving husband and the heirs

of the wife, jointly, subject to the payment of community debts and charges.

Unquestionably, the one-half interest of the deceased in the community passed under the usufruct of the surviving husband at her death, and the inheritance of her heirs became subject thereto, and will so remain until it shall terminate.

Unquestionably, the wife while living, incurred *no personal responsibility* for the debts of the community, and, consequently, neither her succession nor heirs become responsible therefor after her death; notwithstanding the heirs will be entitled to any *residuum* there may remain after the settlement of the debts of the community at the termination of the surviving husband's usufruct.

The foregoing are fundamental and elementary propositions, in support of which citations of authority and the principles of the Code are deemed unnecessary.

And accepting same as correct, it is not readily perceived upon what ground the pretensions of the administrator are founded; for if the wife was not personally bound for the payment of community debts while living, no duty is cast upon the administrator of her estate in reference to their liquidation and payment in her succession.

It may be said that the wife's heirs have an interest in seeing commnnity debts discharged, because they have an interest in ascertaining the *residuum* in order that the amount of the bond of the usufructuary may be fixed.

But, conceding this interest, the claim of the administrator's counsel is a *non sequiter*, for the reason that the heirs have a different and adequate remedy for ascertaining the net value of their half interest in the community by making proof, contradictorily with the survivor and usufructuary, of the value thereof and the amount of the debts, and thus fix a basis for his bond.

This was the course pursued in the succession of Mrs. Julia Abes, which figures in the suit of Abes vs. Levy, 48 An. 41, recently decided. ·

It is also undeniable that the husband is, during the existence of the community, personally and individually liable for community debts, and is chargeable with their settlement after the death of his wife, irrespective of his usufruct.

But we find, in the reasons of the judge *a quo* for the decision he rendered, the following statement, viz.:

"On May 29, 1894, in passing on the petition of plaintiff herein, to be put in possession as usufructuary of his wife's share in the property, I decided that the administrator (of the wife's succession) had the legal possession of such share, and the plaintiff could not take it as usufructuary without paying the debts of the community. That judgment was never appealed from, but acquiesced in by the parties; the plaintiff herein having since paid the greater portion of the debts, excluding the debt of the community to the separate estate of the deceased."

Though, he frankly admits, that since that decision was rendered this court has rendered an opinion announcing an opposite view, citing Hewes vs. Baxter, 46 An. 1281, and that he deems it to be his duty to follow it.

Consequently he was of opinion that on account of this difference of opinion between this court and himself, and the fact that the plaintiff is now "in the enjoyment of the community property as usufructuary, upon paying the debts of the community; and considering the fact that the said husband had paid many of the debts under said judgment," he thought it would serve the ends of justice and equity to arrest the sale of the community property for the time being at least.

"As the debts of the community have not been all paid; and as it has been alleged that there are debts due by the separate estate of the wife, provision will be made in the decree for their payment out of the property, should the surviving husband fail to pay them. The community owes the separate estate of the wife, and the amount of this claim may be sufficient to pay the debts of the (wife's) separate estate. If insufficient, then the administration will have the right to force a liquidation of the community, in order to subject the wife's residue to the payment of the debts of her separate estate.

"To accomplish this a delay of ninety days will be accorded to the surviving husband and usufructuary to pay the debts of the community, and particularly the debt due to the separate estate of the wife," etc.

Then follows the reservation specified above.

It appears from the foregoing that the additional question is

presented, of the right of the administrator of the wife's *separate* estate to collect a debt that is *due by the community to the separate estate of the wife by succession sale of the community property while the husband is still living.*

The decision of this question necessarily arises in determining the legality of the judge's reservation, which is the principal object of this appeal; but inasmuch as this controversy is being waged between the administrator of the wife's estate, representing its creditors primarily, and the surviving husband, the two propositions may be taken together.

The most recent and most pertinent expression of this court on the subject is to be found in Hewes vs. Baxter, 46 An. 1281, in which the Chief Justice, in speaking for the court, said:

"Defendant's theory that when the community of acquets and gains is dissolved by the death of the wife, and her succession has been opened and a testamentary executor appointed thereto, that the community property passes into the possession and under the control of this executor, and the community has to be settled and liquidated in the wife's succession by and through an administration of the executor, is not correct."

But while that decision was brought to the notice of the judge *a quo* and he recognized its applicability in some respects, yet he seemed to regard himself as bound by some previous decree he had rendered with regard to the husband's usufruct, and consequently made the reservation of which appellant complains. It must be observed, however, that no point is made by either party to the present suit upon that judgment, and that neither party has sought protection under it, and, therefore, the whole question is presented for decision.

The opinion expressed in Hewes vs. Baxter, 46 An., is not only well stated and in a proper case, but it is in keeping with the uniform jurisprudence of this court.

In succession of Hooke, 46 An. 353, it was held that a creditor of a community can not compel an administration of the wife's succession, but his remedy is to proceed against the surviving husband and against the community property for the satisfaction of the claim— citing several recent decisions.

In Hart vs. Foley, 1 Rob. 378, it was said:

"As our laws, however, have provided no mode to compel a

regular settlement of a community dissolved by the death of the wife, it behooves the creditors of the community to interfere for the protection of their rights.

"After the death of one of the spouses in a legal sense of the word the community is terminated; each party is seized of one undivided half of the property, subject to the payment of debts. The creditor who wishes to hold the heirs of the wife responsible for a community debt must join them in his suit against the husband," etc.

In Succession of Cason, 32 An. 790, it was said that " community creditors are under no necessity to provoke its liquidation through the medium of the wife's succession, because it is settled they may disregard the wife's interest and proceed directly against the community property in the possession of the husband, contradictorily with him alone."

In Landreaux vs. Louque, 43 An. 234, this court recognized the right of a community creditor to foreclose a mortgage by executory proceedings conducted against the surviving husband alone, without citation or notice to the heirs of the deceased wife.

To the same effect are Foutz vs. Bistes, 15 An. 636, and Killelea vs. Barrett, 37 An. 865.

In Dawson vs. Ripley, 17 La. 258, it was held that when the community is dissolved by the death of the wife, the surviving husband is usually applied to for the satisfaction of community debts.

In Rusk vs. Warren, 25 An. 314, it was held that the death of the wife does not deprive the surviving husband of the right to make *bona fide* settlements for the payment of the debts of the community.

In Hawley, Administrator, vs. Crescent City Bank, 26 An. 230, the court said:

" Upon the dissolution of the community by the death of the wife, the responsibility of the husband in regard to the community debts is not changed. He is absolutely and personally bound for their payment; and his separate property may be seized and sold for their acquittal. This being his position he has under his control the community property which by law is expressly subjected to the payment of the community debts; and he has, so far as the final settlement and liquidation of the community after its dissolution is concerned, the same rights he had during its existence, because he is, after dissolution, under the same responsibilities for the community debts

that he was before the dissolution. It is but just that he should have these powers (because) the community property continues under his control until the debts are paid."

In Vinson, Administrator, vs. Vives, 24 An. 336, it was held that the surviving husband had the legal right to collect community debts because he was owner of one-half of the community property and usufructuary of the other, and the court recognized and maintained as legal and binding a compromise which he had made with a debtor of the community, subsequent to the death of his wife, of a large mortgage debt.

In Succession of Bringier, 4 An. 389, it was held that the right of the surviving husband to the usufruct of the share of the deceased wife in the community attaches at the same moment that the rights of property accrue in favor of his heirs. That the usufructuary is permitted in such case to retain the whole and receive its fruits on making the necessary advances to discharge the debts, which are to be reimbursed without interest at the termination of the usufruct.

And in Succession of Fitzwilliams, 3 An. 489, it was said: " Nor is the exercise of the right of the usufructuary inconsistent with that of the heirs or of the creditors to insist on a speedy adjustment of the debts of the community and on a sale of the property for that purpose if necessary."

To the same effect is Succession of Brinkman, 5 An. 27.

In Moore vs. Moore, 20 An. 159, it was said that the surviving husband is in possession of right under the law and " can so continue until a partition or a second marriage."

Of the same purport is Succession of Viaud, 11 An. 297. As indicating the outgrowth of the foregoing consistent and well settled jurisprudence relative to the rights of creditors against a community which has been dissolved by the death of the wife—and we have expressly and specially eliminated all other questions from consideration it was decided in Baird vs. the Heirs of Sprowl, 23 An. 424, that a community creditor may seize and sell, under execution conducted against the surviving husband alone, property of the community in satisfaction of a judgment, and that the heirs of the deceased wife had no interest or right to enjoin the sale.

In Ricker vs. Pearson, 26 An. 391, it was held that community property having been sold under execution against the surviving husband in the collection of a community debt, the heirs of the

deceased wife had no standing in court to annul the sale, or to claim an interest therein.

To the same effect is Riley vs. Condran, 26 An. 294. And finally it was decided in Succession of McLean, 12 An. 223, that an administration of the deceased wife's estate was unnecessary for the purpose divesting that of the community, and vesting a complete title in a purchaser in the property sold.

This principle was again announced in Heirs of Brown vs. Jacobs, 24 An. 526.

Having made a most careful and studious examination of adjudicated cases, in which this court has dealt with the rights of community creditors and of the means which the law has accorded them for the enforcement of their claims against the property of the community after it has been dissolved by the death of the wife, we feel safe in announcing our conclusion to be fully in accord with the views expressed in Hewes vs. Baxter, and Succession of Hooke, *supra*. And the result of this conclusion is that we hold that the administrator of the succession of Mrs. Jeanne Claude Devillard, defendant herein, is without right or authority to take or assume possession or control of the property held in community between the deceased and the plaintiff as her surviving husband and usufructuary, or to sell same, in the course of the administration thereof, for the purpose of paying debts of the community, albeit they are debts due by the community to the separate paraphernal estate of the deceased wife.

Such administrator has the right, of course, to administer the separate estate and property of the deceased wife, in so far and to the extent that same does not trench upon the community, in which she had only a *residuary* interest, and for the debts of which she was not *personally* bound.

This administration involves the right of the wife's succession representative to take any and all necessary proceedings against the surviving husband for the collection of any indebtedness of the community to her separate estate; but it does not confer upon him the power to make sale of property of the community for that purpose in her succession.

We are of opinion that the appellant has made manifest his right to have the judgment appealed from amended, and the reservation made by the judge *a quo* annulled.

It is therefore ordered and decreed that the judgment appealed from be so amended as to reject and disallow the reservation contained therein; and it is further ordered and decreed that the plaintiff's demand be recognized and enforced, and that his injunction be sustained and perpetuated without other damages than counsel fees, which are fixed at two hundred and fifty dollars, and that as thus amended the same be affirmed at the cost of the defendant and appellee in both courts.