182 So.2d 539 (1966)
Pierre BOURGEOIS, Jr., et al.
v.
Odom B. DUCOS et al.
No. 6543.
Court of Appeal of Louisiana, First Circuit.
January 24, 1966.
*541 Guzzetta & LeBlanc, Thibodaux, for appellants.
Pugh, Lanier & Pugh, Peltier & Peltier, Wollen J. Falgout, Deramee & Deramee, Thibodaux, for appellees.
Before ELLIS, LANDRY, REID, BAILES, and F. S. ELLIS, JJ.
LANDRY, Judge.
This is a petitory action in which plaintiffs request recognition as owners of an undivided one-half interest in certain real property situated in Lafourche Parish and formerly belonging to the community of acquets and gains existing between plaintiff's ancestors, Pierre Bourgeois and his wife, Marie Josephine Gaude, but which property was sold to pay succession and community debts in the administration of the estate of Marie Josephine Gaude Bourgeois while her said husband was still alive. In essence plaintiffs contend Pierre Bourgeois never disposed of his one-half interest in subject property during his life-time consequently they are now the owners of said fractional interest by inheritance. Petitioners pray that the above mentioned succession sale and several subsequent transactions dependent thereon be decreed absolutely null, void and of no effect insofar as they may purport to adversely concern the undivided interest herein claimed by plaintiffs in the subject property.
Defendants, the present record owners of the property in dispute, filed exceptions of no right and no cause of action which were sustained by the trial court. From the judgment sustaining said exceptions and dismissing plaintiffs' demands, plaintiffs have appealed.
In both brief and oral argument before this court able counsel for appellant maintains our learned brother below erred in: (1) Holding that the undivided interest of a surviving husband in community may be validly disposed of by the administrator of the deceased wife's succession to pay community obligations; (2) Concluding that the surviving husband in community Pierre Bourgeois, participated in the distribution of community assets pursuant to a reputed division thereof appearing in the deceased wife's succession; (3) Determining that the nullity, if any, of the sale of the surviving husband's one-half interest was a relative nullity subject to the rules of prescription; and (4) Supplying a plea of liberative prescription or estoppel not expressly advanced by defendants.
Defendants' exceptions of no right and no cause of action contain identical terminology presenting two basic contentions. First, that the judgment of the court ordering the sheriff's sale of community property upon application of the administrator of the Succession of Marie Josephine Gaude, deceased wife of Pierre Bourgeois, to pay debts of the wife's succession, is res judicata. In this regard we note the judgment referred to was an ex parte decree signed in chambers by the Clerk of Court in the absence of the presiding judge. Second, it is argued that if the aforesaid sheriff's sale was ineffective as to the undivided interest of the surviving husband in community, Pierre Bourgeois, his said interest in the subject property subsequently accrued to the purchasers at the sale by virtue of the doctrine of after acquired title.
It is of further note that six of the named defendants have answered plaintiffs' complaint asserting an undivided one-half interest in the property in dispute and, alternatively, full ownership of the "lower" half thereof and have also incorporated in said answer pleas of acquisitive prescription of 10 and 30 years. Since the suit did not progress to trial on the merits in the court below, but rather was disposed of *542 upon the exception of no right and no cause of action as herein previously noted, the hereinabove mentioned pleas of acquisitive prescription are not before us on this appeal, consequently a more detailed consideration thereof would serve no useful purpose at this time.
Our esteemed colleague below found that the record of the Succession of Marie Josephine Gaude, deceased wife of Pierre Bourgeois, the original of which was introduced in evidence herein, establishes the following events and circumstances attending the sale of subject property:
"The succession record shows that the property was inventoried, and that Joseph Bourgeois, one of the heirs was appointed and qualified as administrator; that debts were due by the succession, among them being `a note signed by Pierre Bourgeois, the husband of the decedent, and head of the community'; and that all of the property, except certain household furniture was ordered sold on September 6, 1882; that the same was so sold as alleged by plaintiffs; that thereafter a Final Account and a Tableau of Distribution was filed by the administrator, fixing a proposed distribution to Pierre Bourgeois, `as partner in community', of one-half of the net proceeds of the sale after the payment of debts and providing that the other half of the proceeds be distributed in equal portion to the five children, which Final Account and Tableau was `regularly fixed for trial, was taken up and tried, and the law and the evidence being in favor of the administrator and no objection having been filed', and was ordered adjudged and decreed approved and homologated on October 29, 1887."
In addition, our learned brother of the trial court held the succession sale valid in every respect upon authority of the following quotation from a commentary on Creditor's Rights, Priority of Community Creditors, by Carl W. Kavanaugh, appearing in Volume XXV, Louisiana Law Review, Pages 224-226:
"The priority of the community creditor is superior to any claim of ownership on the community property by the surviving spouse or the heirs of the deceased spouse. The question has frequently been litigated in regard to the priority of the community creditor over the wife's interest in the community. The wife's interest was repeatedly characterized as `residuary' prior to the decision in Phillips v. Phillips that the wife was an `owner' of an interest in the community at every moment of its existence. The two concepts are not incompatible, for dessignating the wife's interest as `residuary' merely restates the proposition that the wife's claim to one-half of the community is subordinate to the claims of community creditors. That the wife's claim is residuary in this sense is easily demonstrated. If the wife accepts the community, she is liable for half of its debts. More fundamentally, the wife's claim is one-half the community of gains, and the existence of gains cannot be determined until the debts and losses are paid. Thus the wife is an owner, but her ownership is analogous to that of a partner, subject to divestment by partnership creditors. The interest of the husband is precisely the same in this respect."
Appellants herein were deemed estopped to assert any claim of ownership to the property in question upon the finding of the trial court that the surviving spouse in community and all heirs of decedent Marie Josephine Gaude Bourgeois participated in the distribution of community assets following the judicial sale of subject property. On this premise the learned trial court concluded, "and their descendants are hardly in a position to question it after more than three-quarters of a century."
*543 Our own examination of the record fails to disclose the presence of circumstances justifying the above conclusion. The proceedings had in the Succession of Marie Josephine Gaude Bourgeois show no appearance by the surviving spouse or any heir of decedent other than the administrator who was decedent's son. It appears the application for administration was ex parte considering no other party joined or acquiesced therein. The record does not show a discharge of the administrator consequently it is not certain the proposed distribution of remaining assets was actually consummated.
The final account of the administrator lists a total of ten items including the $124.00 community obligation for the discharge of which the property was ordered sold, together with nine other debts incurred by decedent's succession subsequent to decedent's death in connection with the administration of decedent's estate. The aggregate of said obligations was subtracted by the administrator from the proceeds of the sale of subject property and the tableau of distribution proposes the allocation of one-half of the remainder to the surviving husband and one-tenth thereof to each of decedent's five surviving children. It is clear, therefore, the tableau proposed the surviving husband would bear one-half the cost of decedent's succession instead of charging all costs incidental to the wife's succession against that portion of the fund allocable to her estate for distribution to her heirs. The husband's share of the community is not amenable to the claims of creditors of the wife's separate estate. It is to be further noted that the account lists total liabilities in the sum of $213.70 whereas our own mathematical computation discloses the enumerated items aggregate $313.70. The administrator's final account further indicates the proceeds from the sale amounted to $447.25, leaving a distributable balance of $235.55, (which should correctly have read $135.55 according to the error previously noted herein), which said balance the tableau proposes to allocate to the surviving spouse and heirs. Considering the administrator did not have on hand funds sufficient to distribute in the manner shown on the tableau because of the mathematical error patent on the face thereof, it is clear a distribution in accordance with the tableau and judgment of homologation was not possible. Moreover, the record does not affirmatively show what distribution, if any, was actually made as the succession proceedings are devoid of receipts from either the surviving spouse or any heirs. Again, the tableau states certain items of movable property listed in the inventory were not sold but were, at the request of the heirs, turned over in kind to the surviving spouse, but no receipt therefor appears of record.
The learned trial court held the sale in question was free of the taint of nullity but further concluded that if the transaction were in fact null on the authority of Wood v. Nicholls, 33 La.App. 744; Prothro v. Prothro, 33 La.Ann. 598 and Fried v. Bradley, 219 La. 59, 52 So.2d 247, such nullity was relative rather than absolute. In addition on authority of Fried v. Bradley, supra, from which he quoted at length, the esteemed trial judge further concluded that if the sale were null "* * * after the lapse of more than eighty years, the attack comes too late."
In so holding we find our able brother below fell into error. We note that Fried v. Bradley, upon which the trial court relied herein, involved the question whether the liberative prescription of LSA-C.C. Article 2221 was properly applicable under the circumstances therein shown. It is of the utmost significance that no plea of liberative prescription has been filed by any defendant in the case at bar and our statutory law is positive to the effect such an exception or plea cannot be supplied by the court. LSA-C.C.P. Article 927.
*544 Wood v. Nicholls, 33 La.Ann. 744, cited and relied upon by the esteemed trial judge expressly holds that the estoppel resulting from receipt by the heirs of their virile shares of the proceeds of a sale must be specially pleaded as a defense as must also the analogous defenses of payment, release and novation. The rule of the Wood case, supra, was legislatively incorporated into our codal system by the terms of LSA-C.C.P. Article 1005 which expressly provides a plea of estoppel must be especially pleaded in respondent's answer. No such plea appears in the answer filed herein consequently it cannot be considered at this time and was, perforce improperly supplied and considered by the court below.
It is well settled in our jurisprudence that an exception of no right of action serves to question only the plaintiff's alleged want of interest in the subject matter of the litigation or his reputed incapacity to stand in judgment. Termini v. McCormick, 208 La. 221, 23 So.2d 52; Wheeler v. Rodriguez, 13 La.App. 97, 126 So. 715; Hand v. Coker, La.App., 11 So.2d 272. The present suit is a class action wherein plaintiff as a class claim to be the heirs of Pierre Bourgeois entitled as such to be declared and recognized as owners of an undivided interest in certain real property.
It is also well settled that an exception of no cause of action is primarily concerned with whether plaintiff's petition recites a justiciable complaint or legal or equitable grounds for relief against the named defendants, and in the determination of such an exception all well pleaded allegations of the petition must be accepted as true. If the petition recites a right or cause of action in any respect, it is not vulnerable to an exception of no cause of action. Harwood Oil & Mining Company v. Black, 240 La. 641, 124 So.2d 764; Levert-St. John, Inc. v. Birmingham Fire & Casualty Co., La.App., 137 So.2d 494. A special defense cannot ordinarily be pleaded in an exception of no cause of action. Stafford's Estate v. Progressive Nat. Farm Loan Ass'n, 198 La. 122, 3 So.2d 532; Lobell, for Use and Benefit of Hardware Mut. Cas. Co. v. Neal, 48 So.2d 797.
The exceptions of no right and no cause of action filed by present defendants recite in substance that the petition fails to state a cause of action because the surviving spouse in community is entitled to his share of the acquets and gains subject to prior payment of all community obligations. On this premise it is contended that since subject property was in fact sold to pay a community debt and the surviving spouse received his pro rata share of the remaining proceeds, the sale was valid and plaintiffs, as heirs of the survivor in community, have no legal ground for complaint and no cause for legal or equitable relief. In support of this contention, appellees rely upon 25 Louisiana Law Review 225; Tomme v. Tomme, 174 La. 123, 139 So. 901; Succession of Dumestre, 42 La.Ann. 411, 7 So. 624; Lawson v. Ripley, 17 La. 238; Succession of McLean, 12 La.Ann. 222; Hart v. Foley, 1 Rob. 378; Tugwell v. Tugwell, 32 La.Ann. 848; Heirs of Brown v. Jacobs, 24 La.Ann. 526.
Upon examination of the cited authorities we find Succession of McLean, 12 La. Ann. 222, inapplicable, inasmuch as it pertains to the rights of a surviving wife in community. We also note the court therein declared:
"Now as the husband is responsible for the debts of the community, and must answer for the same out of his separate estate, if the community is insufficient, and as the wife may renounce and claim that her paraphernal rights shall be paid out of his estate, the settlement of the community is natural consequence of the settlement and payment of the debts of the succession.
The funds of the community, out of which the debts are to be paid, ought *545 to be placed in the hands of him who is charged with payment of the debts. * * *"
The jurisprudence, however, establishes a different rule when the husband is the surviving partner in community, as will be shown hereinafter.
Lawson v. Ripley, 17 La. 238, also involves settlement of a community following the death of the husband rather than the wife.
In both Succession of Dumestre, 42 La. Ann. 411, 7 So. 624, and Tugwell v. Tugwell, 32 La.Ann. 848, no community debts were involved.
Hart v. Foley, 1 Rob. 378, cited and relied upon by exceptors, appears to support appellants' position in that it holds a creditor of the community must join the heirs of the deceased wife in a suit against the surviving husband to assert a community debt.
In Tomme v. Tomme, 174 La. 123, 139 So. 901, an action by a divorced wife to obtain a money judgment against the husband for one-half the alleged value of the community, without seeking a partition, the following pertinent language appears:
"The husband, being head and master of the community, is presumed to be in possession of its effects during its existence, and at its dissolution, and he may retain and use the property in order to pay the community debts. Rusk, Adm'r v. Warren, 25 La. 314."
Heirs of Brown v. Jacobs, 24 La. Ann. 526, is authority for the principle that forced heirs cannot maintain an action to annul a judicial sale of succession property regularly made in pursuance of prescribed legal procedure to pay debts of the succession. Obviously this rule has no application to a succession sale which is unlawful because the subject matter of the sale did not belong to the estate of the decedent involved.
While it must be conceded the rights of both husband and wife in the community assets are subject to the rights of the creditors of the community, nevertheless the community creditor must proceed against the proper person in the enforcement of his claim. The husband and heirs, if any, of the deceased wife, are the proper parties against whom community creditors should proceed in seeking payment of debts owed by the community of acquets and gains. The administrator of a deceased wife's succession cannot presume to pay obligations of the community without the full consent and approval of the surviving husband. In Verrier v. Lorio, 48 La.Ann. 717, 19 So. 677, the court held that the administrator of the wife's succession cannot make a sale of community property to enforce payment of a debt owed by the community to the deceased wife's separate estate.
Squarely in point is Miguez v. Delcambre, 125 La. 176, 51 So. 108, which held that the administrator of the wife's succession, which estate owed no debts, has no standing either to accelerate or impede payment of the community obligations or to meddle with the property of the community.
The case of Elizardi v. Kelly, 115 La. 712, 39 So. 851, holding that the surviving husband may provoke a sale of community property to pay community debts in his wife's succession, quotes from Succession of Cason, 32 La.Ann. 790 (a case apparently opposed to the holding of Hart v. Foley, 1 Rob. 378, on the question of the necessity of joining the heirs of the wife in a creditor's action against the husband for a community debt), and states the following:
"The creditors, also, are protected. They have a right of action.
In Succession of Cason, 32 La.Ann. 790, the court held:
`That community creditors are under no necessity to provoke its liquidation *546 through the medium of the wife's succession, because it is settled they may disregard the wife's interest and proceed directly against the community property in the possession of the husband, contradictorily with him alone.' (Italics ours.)
It is evident that the question of the necessity of making the heirs of the deceased wife parties to the proceedings against the husband is not before us for decision.
The question here is whether the husband who is natural tutor can have the property sold to pay debts. He can if the creditors do not object. Succession of Smith, 9 La.Ann. 107; Richard v. Deuel, 11 Rob. 508; Davidson v. Davidson, 28 La.Ann. [269] 270; Succession of Hood, 33 La.Ann. [466] 467.
In the second place, the question is, can the husband, thus legally representing the succession of his wife, have property of the community sold to pay its debts? If he can make bona fide settlement for the payment of the debts of the community (Rusk v. Warren, 25 La.Ann. 314); if, upon the dissolution of the community, the husband's liability for community debts is not changed (Hawley, Adm'r v. [Crescent City] Bank, 26 La.Ann. 230) he should have the right as tutor of his children to provoke a sale of community property to pay debts."
In Rusk v. Warren, Crawford, et al., 25 La.Ann. 314, it was held that the husband as head and master of the community is not deprived by the death of his wife of the right to control and administer the community. More precisely, the court therein ruled that renewal of notes given by the husband during the existence of the community does not novate the debt so as to relieve the community property from liability therefor.
The record discloses the succession of the present decedent was free of debt excepting only the obligation owed by the community, all other accounts due by decedent's estate being incurred as a result of the administration of her affairs. We conclude, therefore, the case at bar is analogous to and controlled by the ruling in Miguez v. Delcambre, supra.
It follows from the foregoing that the sale of the community property in question was unlawful, and plaintiffs' petitions state a cause of action.
We express no views herein concerning defendants' exceptions of prescription as said exceptions were not passed upon by the trial court.
Accordingly, it is ordered, adjudged and decreed that the judgment of the trial court sustaining defendants' exceptions of no right and no cause of action and dismissing and rejecting plaintiffs' petitions are hereby annulled, reversed and set aside. It is further ordered, adjudged and decreed defendants' said exceptions of no right and no cause of action be and the same are hereby overruled and this matter remanded to the trial court for further proceedings not inconsistent with the views herein expressed. Costs of this appeal are to be paid by defendants; assessment of all other costs shall await the final outcome of this matter.
Reversed and remanded.